UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

:

THERESA RED and GREGORY RED,                                    :

                                    Plaintiffs,                 :

                                                               :

            -v-                                                :        19-cv-4992 (LJL)

                                                               :

LAM PLATT STREET HOTEL, LLC, LAM PLATT           :        OPINION AND ORDER
STREET HOTEL, LLC a/k/a FOUR POINTS BY           :
SHERATON NEW YORK DOWNTOWN HOTEL,                :
REAL HOSPITALITY GROUP,                          :

                                                               :

                                    Defendants.                 :

_____       :

REAL HOSPITALITY GROUP d/b/a FOUR POINTS         :
BY SHERATON NEW YORK DOWNTOWN HOTEL,             :
LAM PLATT STREET HOTEL, LLC, REAL                :
HOSPITALITY GROUP, LLC, LAM PLATT STREET         :
HOTEL LLC,                                       :

                                                               :

                                    Third-Party Plaintiffs,     :

                                                               :

            -v-                                                :

                                                               :

SKYTEAM CORP.,                                                 :

                                                               :

                                    Third-Party Defendant.      :

_____       :

SKYTEAM CORP.                                                  :

                                                               :

                                    Cross Claimant,             :

                                                               :

            -v-                                                :

                                                               :

LAM PLATT STREET HOTEL LLC, LAM PLATT           :
STREET HOTEL, LLC, REAL HOSPITALITY GROUP,       :

                                                               :

                                    Cross Defendants.           :

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__4/28/2022__

LEWIS J. LIMAN, United States District Judge:

Plaintiff Theresa Red ("Plaintiff" or "Red") alleges that she suffered physical injuries when on August 18, 2018, she tripped on a hump in the carpeting on the 26th floor of the Four Points by Sheraton New York Downtown Hotel (the "Hotel") on Platt Street in New York City. Dkt Nos. 1, 64.  On August 18, 2018, the Hotel was owned by Lam Platt Street Hotel, LLC ("Lam"), and Real Hospitality Group LLC ("RHG") was the manager of the Hotel.  Dkt. No. 88 ¶ 2.  Red sued Lam, Lam "a/k/a Four Points by Sheraton New York Downtown Hotel," RHG, and RHG "d/b/a Four Points by Sheraton New York Downtown Hotel" (together, "Defendants" or "Third-Party Plaintiffs") for negligence, and her husband, Gregory Red, sued for loss of services and consortium and associated damages.[1]  Red also initially sued Skyteam Corp. ("Skyteam"), the entity that installed the carpeting on the 26th floor, for negligence, but has since voluntarily discontinued her action against it.  Dkt. No. 102.  Defendants cross-claim against third-party defendant Skyteam for contribution and apportionment, alleging that if Plaintiff was injured by any cause other than her own negligence, that would mean Skyteam was negligent in the installation of the carpeting and shares responsibility for Plaintiff's injury.  Dkt. No. 23.

Two motions are currently before the Court.  Defendants move for summary judgment on Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 56, arguing that Plaintiff has failed to identify evidence sufficient to create a genuine issue of fact that a dangerous or defective condition existed or that they created the alleged defect or had actual or constructive notice of it and that, on the undisputed facts, any defect, if it existed, was trivial as a matter of law.  Dkt. Nos. 90, 91.  Third-party defendant Skyteam moves for summary judgment on the cross-claim against it, arguing that it did not owe any duty that could give rise to liability in this

---

[1] For ease of reference, the Court refers to Theresa Red alone as "Plaintiff" or "Red" in this case.

case, that it is not responsible for any negligence of the carpet installers it hired, and that there is no evidence from which a jury could find that it created a non-trivial defect giving rise to Plaintiff's injury.[2]   For the reasons that follow, both motions are denied.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And "[a]n issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (internal quotation marks omitted).  "[I]n assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008).

The party seeking summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  If the movant meets its burden, "the nonmoving party must come forward with admissible evidence to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  To survive summary judgment, the nonmoving party "may not rely on mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159,

---

[2] Skyteam originally moved for summary judgment on the direct claim against it.  Since Plaintiff has since voluntarily discontinued its case against Skyteam with prejudice, Skyteam's motion for summary judgment against Plaintiff is denied as moot.

166 (2d Cir. 2010) (internal quotation marks omitted), and must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted). But if "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

The federal burden of proof on a motion for summary judgment differs from the corresponding standard under New York law in a slip-and-fall action. *See, e.g.*, *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 12–13 (2d Cir. 2008) (summary order); *Vasquez v. United States*, 2016 WL 315879, at *4–5 (S.D.N.Y. Jan. 15, 2016). "Under New York law, '[a] defendant who moves for summary judgment in a [sl]ip-and-fall case has the initial burden of making a prima facie showing that it neither created the alleged hazardous condition, nor had actual or constructive notice of its existence for a length of time sufficient to discover and remedy it.'" *Vasquez*, 2016 WL 315879, at *4 (quoting *Levine v. Amverserve Ass'n, Inc.*, 938 N.Y.S.2d 593, 593 (2d Dep't 2012)). Conversely, under federal law, the moving party "need not make any affirmative *prima facie* showing on [a] motion for summary judgment, and may discharge its burden of proof merely 'by pointing to an absence of evidence to support an essential element of [Plaintiff's] claim.'" *Id.* at *5 (quoting *Zeak v. United States*, 2014 WL 5324319, at *8 (S.D.N.Y. Oct. 20, 2014); *see also Feis v. United States*, 394 F. App'x 797, 798–99 (2d Cir. 2010) (summary order) (applying New York substantive law and federal procedural law and concluding that "contrary to plaintiff's assertions, defendant was not required to

4

affirmatively disprove each element of plaintiff's [slip-and-fall] claim").  While New York law governs the substantive slip-and-fall claim, federal law applies to procedural aspects of the claim, and "[b]ecause the moving party's burden of proof on a summary judgment motion is procedural, it is therefore governed by federal law."  *Sampson v. Sarah Lawrence College*, 2021 WL 3855862, at *5 (S.D.N.Y. Aug. 26, 2021).

## DISCUSSION

### I.    Defendants' Summary Judgment Motion

Defendants move for summary judgment on Plaintiff's complaint, arguing that Plaintiff has not presented evidence to create a triable issue on any of the elements of her claim.[3]

"To establish liability under New York law, a plaintiff must prove (1) that the defendant owed her a duty; (2) that the defendant breached that duty; and (3) that she suffered injuries proximately resulting from that breach."  *Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020).  For a defendant to be held liable to the plaintiff in a slip-and-fall case, there must be evidence showing two things: first, that a dangerous or defective condition existed, and second, that the defendant either (1) "created the condition" or (2) "had actual or constructive notice of it and failed to remedy it in a reasonable time."  *Winder v. Exec. Cleaning Servs., LLC,* 936 N.Y.S.2d 687, 688 (2d Dep't 2012); *see also Feis*, 394 F. App'x at 798 (2d Cir. 2010) ("To make out a prima facie case of negligence in a slip and fall case under New York law, a plaintiff must demonstrate that defendant had knowledge of the alleged dangerous condition, either actual or constructive, or that it caused the condition to be created by its own affirmative act." (internal

---

[3] Plaintiff brings her negligence claim against all of the Defendants, alleging that the Hotel was "owned, operated, managed, maintained and/or controlled by and/or the auspices of" each of the Defendants.  *See* Dkt. No. 64 ¶¶ 80–84.  Defendants jointly move for summary judgment and refer to themselves jointly.  Because the parties do not distinguish among the entities comprising Defendants, the Court does not either.

quotation marks and citation omitted)); *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004) (explaining that, for a slip-and-fall premises liability case, "the plaintiff must demonstrate that the landowner created the condition that caused the injury, or that the landowner had actual or constructive notice of the condition").

Drawing all inferences in Plaintiff's favor as the non-moving party, there is sufficient evidence to create a jury issue that she was injured as a result of a dangerous or defective condition and that the Defendants had actual or constructive notice of it and failed to remedy it within a reasonable time.  In particular, the evidence could support that Plaintiff and her daughter, non-party Katie Red, were paying guests at the Hotel from August 16, 2018 to August 19, 2018, Dkt No. 88 ¶ 1; that on the evening of August 18, 2018, Plaintiff tripped and fell in the Hotel's hallway after she exited her room on the 26th floor as she headed towards the elevator banks to go to the hotel gym, *id.* ¶¶ 11, 26; Dkt. No. 92-18 at 42–44, and that as a result she suffered injuries and had to be taken from the Hotel to the hospital by ambulance, Dkt. No. 88 ¶ 21; Dkt. No. 92-18 at 65–66.  Immediately after her fall, she contacted the Hotel front desk and reported that she fell on a hump in the carpet next to her door.  Dkt. No. 92-6; Dkt. No. 92-18 at 58–69.

Although Defendants dispute that there existed any defect in the Hotel hallway carpeting that caused Plaintiff's injury, a jury could find otherwise.  After Plaintiff fell, she got up and retraced her steps to determine what caused the fall and felt what she described as an "uneven like a hump" [sic] in the carpet with her right foot at the location where she tripped.  Dkt. No. 88 ¶ 26; Dkt. No. 92-18 at 51.  Although she did not see the hump, she felt it with her right foot and described it as very hard.  Dkt. No. 88 ¶¶ 27, 29.  When she returned to the location of her injury

that evening after visiting the hospital, she felt the hump and described it as "[v]ery hard," and "rough edges," and that it felt "like concrete."  Dkt. No. 92-18 at 78–80.

Plaintiff's testimony was corroborated by that of the fire safety director, Peter Levine, who was employed by a third party on the evening of the accident and was stationed in the lobby of the Hotel as a fire safety director and security guard.  Dkt. No. 88 ¶ 15; Dkt. No. 87-4 at 14. Among Levine's responsibilities was responding to calls when a hotel guest had an accident or tripped and fell.  Dkt. No. 87-4 at 27.  On the night of the accident, Levine was called to the 26th floor after having been alerted to the incident by the front desk personnel at the Hotel.  Dkt. No. 88 ¶ 16; Dkt. No. 87-4 at 12, 34–35, 38.  When he arrived on the 26th floor, he saw the Plaintiff in pain; she reported that she had tripped and fallen over a portion of the floor that was warped and she pointed him to where the warped area was.  *Id.* at 42, 44.  Levine then observed the "hump," explaining that it was about two to three inches above the surrounding carpet.  *Id.* at 45–46.

Plaintiff testified that she showed the hump to her daughter and her cousin and that they both placed their foot on the hump.  Dkt. No. 92-18 at 77.  Plaintiff's daughter also testified that she saw the hump in the carpet after it was pointed out to her when she returned to the Hotel the night of the accident and that she was able to feel it with her foot.  Dkt. No. 92-20 at 9–10.

Defendants point to evidence from the general manager of the Hotel who testified that he inspected the carpet on the 26th floor when he returned to work two days after the accident (and who had traversed the floor many times before) and who never saw a defect.  *See* Dkt. No. 87-2 at 96; Dkt. No. 87-3 ¶ 4.  They also argue that Plaintiff's evidence should not be credited because Levine and Plaintiff put the hump in different locations, because the hump and its size is difficult to detect in the photographs contemporaneously taken of the carpet, the hump was not apparent

when an inspection was done after the litigation was commenced, and Plaintiff did not retain a forensic expert to examine the hump.  Plaintiff disputes that she and Levine put the hump at different locations.  Even if they did, however, it would not be fatal to Plaintiff's claim that when deposed she and Levine put the hump at slightly different locations.  They were each deposed well over a year after the event.  What is telling is that they were consistent that Levine asked Plaintiff where she fell and that both she and Levine felt a disfiguration of the carpet at that location.  *See* Dkt. No. 92-18 at 61–62; Dkt. No. 87-4 at 44–45.  At most, then, the discrepancy raises a jury question.

There also is evidence to support that Defendants were on notice of the defect.  Among other things, Levine testified that he had reported the defect in the 26th floor carpet to the head engineer at some point before August 18, 2018.  Dkt. No. 87-4 at 46–48, 60; *see also id.* at 141 (Levine testifying that he reported the hump to someone from the Hotel "[o]nce or twice" prior to the accident).  He testified that he "noticed [the defect] every day [he] did a floor patrol."  *Id.* at 60.  Although Defendants argue that the defect reported by Levine was not the same as the one he observed on August 18, 2018 and that Plaintiff testified caused her injury, the jury could find otherwise.

The opinion in *Vasquez*, 2016 WL 315879, upon which Defendants rely, is distinguishable.  In that case, the plaintiff alleged that she suffered injuries when she tripped on a door saddle while exiting the post office and fell forward onto the sidewalk.  *Id.* at *1.  However, she failed to "specifically identify how or why that piece of metal caused her to fall," offering only speculation that "there must have been a gap between the door saddle and the ground, and it must have been that gap that caused her to fall."  *Id.* at *6.  The court concluded "the 'mere fact' that the door saddle caused [p]laintiff to trip does not establish the existence of a dangerous

condition or defect," *id.* (quoting *Pena v. Women's Outreach Network, Inc.*, 824 N.Y.S.2d 3, 8 (1st Dep't 2006)), reasoning "[i]t is entirely possible that the door saddle caused Plaintiff to fall, despite the fact that it was not in any way damaged or defective," *id.*  In addition, the plaintiff offered only speculation that the defendant caused the alleged defect, did not suggest that the defendant had "actual notice of any hazard associated with the door saddle," and identified no evidence that the allegedly dangerous condition was visible or apparent." *Id.* at *7–8.

In this case, by contrast, Plaintiff has not relied upon the absence of affirmative evidence offered by Defendants or asserted that the mere existence of a carpet was itself a hazardous condition.  She has offered affirmative evidence of a dangerous defect—a large hump in the carpet that should not have been there—that was apparent, and that had in fact been reported to Defendants prior to the accident.   She has thus offered evidence sufficient for a reasonable jury to find both the existence of a dangerous or defective condition and that the Defendant had actual notice of it and failed to remedy it within a reasonable time.

Finally, Defendants argue that even if there was a defect, it was trivial as a matter of law and thus not actionable.  "Although the issue of whether a condition is sufficiently dangerous or defective to trigger liability is generally reserved for the factfinder, New York courts recognize an exception to this rule where as a matter of law, 'a defendant "may not be cast in damages for negligent maintenance by reason of trivial defects on a walkway . . . as a consequence of which a pedestrian might merely stumble, stub his toes, or trip over a raised projection."'" *Sampson*, 2021 WL 3855862, at *6 (quoting *Hutchinson v. Sheridan Hill House Corp.*, 41 N.E.3d 766, 774 (N.Y. 2015)).  "[C]ourts generally consider trivial 'dangerous or defective condition[s] alleged by a pedestrian [with] a height differential of approximately one inch.'"  *Estrella-Jones v. United States*, 2016 WL 7243540, at *3 (E.D.N.Y. Dec. 14, 2016) (quoting *Natijehbashem v. United*

*States*, 828 F. Supp. 2d 499, 507 (E.D.N.Y. 2011)).[4]  However, "[t]here is no 'per se rule that a defect must be of a certain minimum height or depth in order to be actionable,' and courts are to consider 'the width, depth, elevation, irregularity and appearance of the defect along with the time, place and circumstance of the injury.'"  *Bursztein v. Best Buy Stores, L.P.*, 2021 WL 3371036, at *2 (S.D.N.Y. Aug. 3, 2021) (alteration adopted) (quoting *Trincere v. Cty. of Suffolk*, 688 N.E.2d 489, 490 (N.Y. 1997)).  A finding that "a defect alleged to have caused injury to a pedestrian [is] trivial as a matter of law [must] be based on all the specific facts and circumstances of the case, not size alone."  *Hutchinson*, 41 N.E.3d at 773.  Even small defects are "actionable when their surrounding circumstances or intrinsic characteristics make them difficult for a pedestrian to see or to identify as hazards or difficult to traverse safely on foot."  *Id.* at 774.  The doctrine turns upon the notion that some defects are too insignificant that even a proprietor who opens his walkways to the public and who has actual or constructive notice of it would have no duty to repair it.  *See Coyle v. United States*, 954 F.3d 146, 149–50 (2d Cir. 2020) (explaining that "even if a condition causes a plaintiff to trip, it may still be sufficiently insignificant that a court may say, as a matter of law, that the defendant's failure to fix that condition was not negligent" and holding that a one inch black mat on a black floor was "not a sufficiently dangerous condition to constitute negligence").  The court—not the jury—is responsible for "determin[ing] whether an alleged condition meets this triviality standard by reviewing 'all the specific facts and circumstances of the case.'"  *Id.* at 149 (quoting *Hutchinson*, 41 N.E.3d at 773).

---

[4] Defendants rely upon *Estrella-Jones*, but in that case the court denied the motion for summary judgment and granted judgment in favor of defendant only in its capacity as factfinder after a full bench trial.  *Id.* at *4.

Defendants have not established their entitlement to summary judgment on a trivial-defect theory.  There is testimony in the record that the hump was from one and a half to three inches high, larger than the defects traditionally considered to be trivial under New York law.  Moreover, based on Defendants' own theory, the "surrounding circumstances" and the "intrinsic characteristics" of the alleged defect would have made it difficult for Plaintiff to see the defect or identify it as a hazard.  *Hutchinson*, 41 N.E.3d at 773.  From the evidence before the Court, a jury could conclude that the hump was camouflaged by virtue of the checkerboard design of the carpet, making it difficult to detect.  Plaintiff's testimony is that while the hump was readily apparent from stepping on it, it was not readily apparent to the naked eye.  *See Glickman v. City of New York*, 746 N.Y.S.2d 24, 24–25 (1st Dep't 2002) (finding trial necessary due to "factual issues regarding whether the dip, even if trivial, presented a hazard due to factors which made it difficult to detect").  The New York courts have recognized that even a small defect may be actionable under circumstances "where pedestrians are naturally distracted from looking down."  *Hutchinson*, 41 N.E.3d at 774.  Such circumstances exist, for example, where the defect is located on "[s]tairways and heavily traveled public highways . . . because pedestrians must take care to descend or ascend the height of the stairs safely and ensure that they do not bump into others, and, thus, are not focused solely on the ground" or "when it 'exists in an area close to the entrance of a public building . . . because the pedestrian's expected attention will be focused on the store entrance and not on navigating height differentials in the pavement.'"  *Sampson*, 2021 WL 3855862, at *8 (quoting *Fosmire v. Kohl's Department Stores, Inc.*, 2009 WL 891798, at *3 (W.D.N.Y. Mar. 31, 2009)).  A jury could reasonably conclude that bulge in the carpeting in a hotel hallway is equally likely to constitute "a trap for the unwary," *see Fasmire*, 2009 WL 891798, at *3, on the theory that a person walking down a hotel hallway

11

from her room to the elevator is likely to be focused on getting to the elevator and is unlikely to feel the need to focus on the carpet beneath her.

Because a reasonable jury could conclude from the evidence that Plaintiff met the elements of her negligence claim, Defendants' motion for summary judgment is denied.

## II.    Skyteam's Motion for Summary Judgment

Skyteam moves for summary judgment on Defendants' third-party claim for contribution and apportionment against it.[5]  That claim is pleaded in negligence.  Skyteam argues that it is entitled to summary judgment because (1) it used independent contractors for the Hotel job and is not responsible for the work that they did and therefore owes no duty to the Plaintiff; (2) as a contractor employed by Defendants, it did not owe a duty to the Plaintiff; and (3) there is no evidence that there was a non-trivial defect that was attributable to the installation of the carpet.[6]

The Court construes the facts in favor of Defendants, the non-moving parties.  Skyteam is engaged in the carpet installation business for commercial tenants, including mostly hotels throughout New York City.  Dkt. No. 88 ¶ 5; Dkt. No. 98 ¶ 71.  Skyteam had five employees—a manager, three carpet installers, and a warehouse manager.  Dkt. No. 98 ¶¶ 71, 72, 75, 86.  Skyteam also used non-employee individuals to install carpets, including four freelance installers whom Skyteam's manager described as independent contractors.  *Id.* ¶¶ 76–78, 87, 90, 110.  In the spring of 2018, Skyteam was hired pursuant to an oral agreement by the Hotel to replace existing carpeting and carpet padding on floors at the Hotel, including on the 26th floor.  Dkt. No.

---

[5] Skyteam's motion for summary judgment states that it is seeking dismissal of Plaintiff's complaint against it.  As noted above, Plaintiff has voluntarily dismissed her claim against Skyteam; the motion is therefore considered only as to the Defendants/Third-Party Plaintiffs.

[6] Skyteam also argues that Defendants rely improperly on an affidavit of counsel.  In considering Skyteam's motion for summary judgment, however, the Court does not rely upon any statements of fact supported only by the affidavit of counsel.  Rather, it relies upon the evidence to which counsel points.

88 ¶ 3; Dkt. No. 98 ¶¶ 32, 34, 37, 41.  The carpet on the 26th floor was installed on August 6, 2018.  Dkt. No. 98 ¶ 119; *see also* Dkt. No. 88 ¶ 3.  The four independent contractors were the only ones who installed carpet at the Hotel in connection with the job for which Skyteam was hired.  Dkt. No. 98 ¶ 100.

The job at the Hotel called for Skyteam to remove the existing carpeting and padding that were on the corridor floors and to apply new padding and carpeting on each of the floors.  Dkt. No. 98 ¶ 122.  Skyteam was not hired to do any cement work or leveling on the 26th floor of the Hotel. Dkt. No. 87-5 at 261.  Although Skyteam provided an estimate to Defendants and sent Defendants invoices, there is no written agreement between the parties.  Dkt. No. 98 ¶¶ 41, 121.  The job involved several phases—Skyteam's manager conducted a site inspection and drew measurements for cutting of the carpeting, Defendants selected the carpeting, and the carpeting was cut by a Skyteam employee overseen by another Skyteam employee, was cut at the Skyteam warehouse, and was delivered by Skyteam to the Hotel.  *Id.* ¶¶ 35, 100.  Skyteam's manager met with the independent contractors to explain the procedures for the Hotel job.  *Id.* ¶ 102.  Skyteam used the freelance workers to install the carpeting at the Hotel but did not inform the Defendants that it would not be using Skyteam employees for the installation.  *Id.* ¶ 128.  The independent contractors were paid in cash for their work—one of the contractors with whom Skyteam had worked for years, Angel, was given cash for all of the workers.  *Id.* ¶ 78.  After the work, the Hotel's general manager did a walk-through of the carpet installation to make sure it was completed.  *Id.* ¶ 47.  Skyteam's manager never received any complaints regarding the installation of the carpet, *id.* ¶¶ 84, 125, nor was Skyteam called back to the Hotel to perform any changes or remediations to the work after the work was completed, *id.* ¶ 126.

The same general elements of a negligence claim apply to Defendants' third-party claim against Skyteam as apply to Plaintiff's claim against Defendants. "[A] plaintiff must establish three elements to prevail on a negligence claim: (1) the existence of a duty on defendant's part to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000). Under New York law, circumstantial evidence may be sufficient to make out a prima facie case of negligence. *Wurtzel v. Starbucks Coffee Co.*, 247 F. Supp.2d 520, 526 (E.D.N.Y. 2003); *Williams v. KFC National Management Co.*, 391 F.3d 411, 421 (2d Cir. 2004).

Skyteam disputes that the first element has been met and argues that there is no evidence from which a jury could conclude that it owed a duty to Plaintiff. Its theory is twofold: First, the individuals who actually installed the carpet were independent contractors, and "[t]he record is devoid of any evidence . . . that would support a [contrary] finding," Dkt. No. 86 at 11, and second, even if the independent contractors were determined to be employees of Skyteam, any duty of care would not run to Plaintiff given that Skyteam was retained by the Defendants, *see id.* at 16.

"A party seeking contribution must show that the third-party defendant from whom contribution is sought owes a duty either to him or to the injured party and that a breach of this duty has contributed to the alleged injuries." *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*, 509 N.Y.S.2d 177, 178 (3d Dep't 1986), *aff'd* 523 N.E.2d 803 (N.Y. 1988); *see also Morris v. Home Depot USA*, 59 N.Y.S.3d 92, 95 (2d Dep't 2017). Skyteam could be liable to Defendants for the requested contribution and apportionment if it owed a duty to the Defendants independent of any duty that would have been owed to the Plaintiff. *See Garrett v. Holiday Inns, Inc.*, 447 N.E.2d 717, 721 (N.Y. 1983) ("If an independent obligation can be found on the part of

14

a concurrent wrongdoer to prevent foreseeable harm, he should be held responsible for the portion of the damage attributable to his negligence, despite the fact that the duty violated was not one owing directly to the injured person."); *O'Gara v. Alacci*, 887 N.Y.S.2d 106, 109 (2d Dep't 2009) ("[I]t has been recognized that a party's liability for contribution can also flow from a breach of an independent duty owed to the defendant, provided that the breach of this duty played a part in causing or augmenting the injury for which the defendant seeks contribution.").

Defendants appear to frame the duty owed by Skyteam as running to them, arguing that, having been hired by the Defendants to perform the carpet work, "it is beyond dispute that S[kyteam] owed a duty to the [Defendants] to perform the work in a non-negligent good and workmanlike manner." Dkt. No. 97 at 3. Any such duty to the Defendants would have to be independent of Skyteam's contractual obligations,[7] *see Phillips v. Young Men's Christian Ass'n*, 625 N.Y.S.2d 752, 754 (3d Dep't 1995), and causes of action alleging that work performed under a contract "was performed in a less than skillful and workmanlike manner . . . sounds in breach of contract, not negligence." *Mack-Cali Realty, L.P. v. Everfoam Insulation Sys., Inc.*, 12 N.Y.S.3d 106, 109 (2d Dep't 2015); *see also Luckoff v. Sussex Downs, Inc.*, 480 N.Y.S.2d 16, 18 (2d Dep't 1984) ("Defendant . . . was bound by contract to a duty of reasonable care and competence owed generally by construction companies, and was obligated to perform in a workmanlike manner.").

However, Defendants also argue that Skyteam failed to exercise reasonable care in performing its duties, thus causing the hump that Plaintiff alleges caused her fall. This argument

---

[7] Skyteam argues that no contract existed between it and the Hotel for the carpet installation. *See* Dkt. No. 86 at 17. This argument is unpersuasive. Even though there was no formal, written contract entered into between Skyteam and the Hotel, all of the evidence—including estimates, invoices, and testimony about verbal agreements to perform the work—indicates that they had entered into a contract for Skyteam to provide carpet installation services.

can be fairly read to assert one of the exceptions under *Espinal v. Melville Snow Contractors, Inc.*, 773 N.E.2d 485, 488 (N.Y. 2002), where "a party who enters into a contract to render services may be said to have assumed a duty of care—and thus be potentially liable in tort—to third persons: . . . where the contracting party, in failing to exercise reasonable care in the performance of his duties, 'launche[s] a force or instrument of harm.'"  *Id.* (quoting *H.R. Moch Co. v. Rensselaer Water Co.*, 159 N.E. 896, 898 (N.Y. 1928)).  Thus, even if Defendants cannot "show that [Skyteam] owed [them] a duty of reasonable care independent of its contractual obligations," *Phillips*, 625 N.Y.S.2d at 754, they may still prevail if Skyteam, through its failure to exercise reasonable care, "launched a force or instrument of harm," *Moch*, 159 N.E. at 898, meaning that it "'can be said to have created an unreasonable risk of harm to others, or increased that risk,'" *Duguay v. City of New York*, 861 F. Supp. 2d 236, 248 (S.D.N.Y. 2012) (alterations adopted) (quoting *Church v. Callanan Indus., Inc.*, 782 N.E.2d 50, 53 (N.Y. 2002)).

Inferences of such negligence may be drawn from circumstantial evidence.  Under New York law, "[t]o establish a prima facie case of negligence based wholly on circumstantial evidence 'it is enough that plaintiff shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred.'" *Schneider v. Kings Highway Hosp. Center, Inc.*, 490 N.E.2d 1221, 1221 (N.Y. 1986) (alterations adopted) (quoting *Ingersoll v. Liberty Bank*, 14 N.E.2d 828, 830 (N.Y. 1938)).  As to causation, to avoid summary judgment, a party simply needs "to establish a reasonable probability that the accident was caused by [the defendant's] negligence." *Williams*, 391 F.3d at 420.  Thus, under New York law, a plaintiff need not "adduce the most reasonable explanation for [an] accident" or "to eliminate all other possible causes" for an accident other than the defendant's negligence. *Id.* A finding that one's negligence caused an injury may be based on "the logic of common

experience itself[] as applied to the circumstances shown by the evidence." *Schneider*, 490

N.E.2d at 1221.  A plaintiff is "not required to prove the exact nature of defendant's negligence."

*Id.*

Defendants argue that the temporal proximity of Plaintiff's accident to the time that the

carpet was installed supports the inference that Skyteam's negligence was the cause of Plaintiff's

injury.  Dkt. No. 97 at 8.  "[T]he relative temporal proximity of [a contractor's] work . . . to the

day of [P]laintiff's accident [is] not . . . alone . . . sufficient to preclude summary judgment" in

favor of the contractor.  *Duguay*, 861 F. Supp. 2d at 251; *see also O'Keefe v. Arbon Equipment*

*Corp.*, 399 F. Supp. 2d 478, 484 (S.D.N.Y. 2005).  But temporal proximity can support a finding

that a contractor's negligence caused a plaintiff's injury.  *See, e.g.*, *Duguay*, 861 F. Supp. 2d at

251.  In *Duguay*, for example, a court found that a jury could reasonably infer that a contractor

"caused a condition contributing to [a] plaintiff's injury," *id.* at 252, where a plaintiff's injury

was allegedly caused by a catch basin caked with dirt and the contractor had been "working with

significant quantities of dirt in the general vicinity of the [plaintiff's accident] on a nearly daily

basis throughout the weeks preceding plaintiff's accident," *id.* at 251.  In denying summary

judgment in favor of the contractor, the court noted not only the temporal proximity of the

contractor's activities that could have led to the conditions allegedly giving rise to the accident

but also pointed to the fact that the accident occurred in an area where dirt did not "predictably

accumulate from everyday events" and where there was the "absence of another explanation" for

the condition.  *Duguay*, 861 F. Supp. 2d at 252.

Drawing all inferences in the light most favorable to Defendants, a reasonable jury could

find that Skyteam did not use reasonable care in installing the carpet and that the installation of

the carpet caused the hump and therefore created an unreasonable risk of harm to others.  There

is evidence that Skyteam's manager did not have any personal knowledge of the experience of some of the carpet installers and did not know if they held any licenses to install carpets. *See* Dkt. No. 87-5 at 147, 257–58. Even if the failure to use licensed workers does not constitute negligence per se, as Defendants argue, there is evidence from which a jury could conclude that Skyteam did not exercise a reasonable degree of care in selecting the individuals they employed for the Hotel job in that Skyteam had little to no knowledge about the extent and type of the experience doing similar jobs of any of the workers except for Angel.[8] Nor did Skyteam provide any supervision over the work performed by Angel and his helpers that may have addressed such a lack of knowledge. *See* Dkt. No. 87-6.

There is also evidence from which a jury could conclude that the carpet installation itself led to the hump in the floor. The installation process involved cutting the carpet to make sure that it fit in the hallways. Skyteam's general manager measured the dimensions of the hallways to guide the cutting of the carpet, and the carpet was initially cut at the warehouse to fit those dimensions, but there is evidence that it was further cut to different dimensions after it was delivered to the Hotel. For example, the Hotel's manager testified in his deposition that he observed the carpet being cut up to specific dimensions after delivery, *see* Dkt. No. 87-2 at 253,

---

[8] Defendants argue that Skyteam's failure to use licensed individuals, as required by Section 20-387 of New York City Administrative Code, establishes that Skyteam was negligent per se. *See* Dkt. No. 97 at 12–15. Section 20-387 provides that licenses are required for those "perform[ing] . . . a home improvement contract as a contractor." "Home improvement" is in turn defined by the code to include alterations, renovations, or improvements to any building "which is used or designed to be used as a residence or dwelling place." N.Y.C. Code § 20-386(2). Defendants assert, without citation, that "it is beyond dispute that a hotel equates with a residence or dwelling place." Dkt. No. 97 at 13. The Court has not found a case that applies this code provision to work done at a hotel. Moreover, the mayor who signed the measure into law and the New York City Commissioner of Licenses at the time "observed that the licensing provisions were designed to protect New York City *homeowners*." *Design Supply Marble & Granite, Inc. v. Mills*, 922 N.Y.S.2d 731, 733 (1st Dep't 2011) (emphasis added). Defendants' arguments that Skyteam is negligent per se because it did not use licensed carpet installers fails.

and Skyteam's manager testified that the carpet would have had to be further cut to meet the actual dimensions of the floor before the carpet was glued down, *see* Dkt. No. 87-5 at 269. Skyteam's manager testified that, when she was taking measurements for the 26th floor for the carpet installation job, she did not remember "seeing the floor having any different levels or not flat," Dkt. No. 87-5 at 40, and that unevenness in the floor was not reported after the original carpet was removed, *see id.* at 205. Evidence that there was no unevenness in the floor before the carpet was installed, but that there was after the carpet had been repeatedly cut and then installed, suggests that any unevenness was a result of the installation of the new carpet.[9]

Skyteam attempts to avoid liability by arguing that the acts of the independent contractors it hired cannot be imputed to it. It argues that the general rule of New York, that "an employer who hires an independent contractor is not liable for the independent contractor's negligent act," applies here. *Fiscina v. Boro Rug & Carpet Warehouse Corp.*, 151 N.Y.S.3d 131, 133 (2d Dep't 2021) (quoting *Rosenberg v. Equitable Life Assur. Socy. of U.S.*, 595 N.E.2d 840, 842 (N.Y.

---

[9] Defendants contend that Skyteam would have been negligent in installing the carpet if it was applied over an existing hump in the floor because the Manufacturer's Specifications for the glue used and guidelines by the Carpet Cushion Council required carpet installation to occur on a flat and smooth floor. Dkt. No. 97 at 3. Even if this were true, Defendants' entitlement to contribution rests on Skyteam having launched a force or instrument of harm, thereby creating or increasing the risk of harm through its negligence; adding carpet over an existing hump in the floor would not *create* or *increase* a risk of harm. As the New York Court of Appeals has recognized, a contractor does not fall within the "launched a force or instrument of harm" exception to *Espinal* where its negligence does "nothing more than neglect to make the [location] *safer*—as opposed to less safe—than it was before the . . . project began." *Church*, 782 N.E.2d at 53; *see also In re Lake George Tort Claims*, 461 F. App'x 39, 41 (2d Cir. 2012) (summary order) (explaining that, where there was no comparison of the danger posed by an old canopy versus a new one, "there can be no triable issue of fact as to whether [the builder of the new canopy] had created or exacerbated a dangerous condition"); *Merriweather v. Crothall Healthcare, Inc.*, 2019 WL 6498712, at *5 (S.D.N.Y. Dec. 2, 2019) ("[S]imply failing to completely remedy an existing dangerous condition . . . 'is not sufficient to meet the "launche[s] a force or instrument of harm" standard.'" (quoting *Haskin v. United States*, 2015 WL 3971730 at *12 (E.D.N.Y. June 30, 2015))).

1992)).  There are exceptions to this general rule, which "fall roughly into three basic categories: negligence of the employer in selecting, instructing or supervising the contractor; employment for work that is especially or 'inherently' dangerous . . . ; and, finally, instances in which the employer is under a specific nondelegable duty."  *Kleeman v. Rheingold*, 614 N.E.2d 712, 715 (N.Y. 1993).  As to negligent selection:

> [a]n employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons.

Restatement (Second) of Torts § 411.  Thus, if a contractor is incompetent because of "his lack of skill and experience . . . the employer is subject to liability for any harm caused by the contractor's lack of skill[] [or] experience."  *Id.* at *cmt b.*

A nondelegable duty may arise as a result of a "client's reasonable expectations and beliefs about who will render a particular service."  *Id.*  Thus:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

Restatement (Second) Torts § 429.  In such circumstances, "the delegation of the performance of the assumed responsibility to . . . an independent contractor, does not absolve [the employer] from liability for [the independent contractor's] negligence."  *Miles v. R&M Appliance Sales, Inc.*, 259 N.E.2d 913, 915 (N.Y. 1970); *see also Nationwide Mut. Ins. Co. v. Castle Oil Corp.* 977 N.Y.S.2d 668 (Sup. Ct. Westchester Cnty. 2013) (explaining that "the ostensible agency doctrine . . . subjects the employer of the contractor to liability where the contractor is careless or negligent in rendering the services the employer understood to perform").  This rule applies not only "where the services are rendered to the injured person because a third person believes that

they are being rendered by the employer of the contractor" but also where "the injured person shares in services which a third person accepts in such belief."  Restatement (Second) of Torts § 429, *cmt a.*

Even assuming the workers that Skyteam used to install the carpeting were properly characterized as independent contractors, the Court cannot say as a matter of law that Skyteam would be able to escape liability from harm resulting from their work.  As the Court has already explained, there are triable issues with respect to whether Skyteam was negligent in selecting the workers to complete the Hotel job given the lack of information it had regarding the workers' background and experience with these types of jobs.  If the hump in the floor resulted from contractors who did not "possess the knowledge, skill, [or] experience . . . which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others," and Skyteam did not exercise reasonable care in making an inquiry to discover this, then Skyteam could be held liable for the physical harm that resulted in its failure to employ a contractor that did have such "knowledge, skill, [or] experience."  Restatement (Second) of Torts § 411, *cmt a.*  There is also evidence in the record that suggests the Hotel was operating under the "reasonable belief" that the services were being rendered by Skyteam and its employees and not by independent contractors. Restatement (Second) of Torts § 429.  *See* Dkt. No. 98 ¶ 42 ("Skyteam never advised the Hotel Defendants that it was not going to use Skyteam employees for the installation work.").  If so, Skyteam could also be held liable for the injuries, if any, caused by the workers' installation of the carpet.

Given the factual disputes with respect to whether Skyteam—or those for whom Skyteam was liable—was negligent in installing the carpet, and whether such negligence created a

dangerous condition that caused Plaintiff's fall, Skyteam is not entitled to summary judgment on the Defendants' claim against it.

## CONCLUSION

The motions for summary judgment are DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 85 and 90.


SO ORDERED.

Dated: April 28, 2022
      New York, New York

                                 LEWIS J. LIMAN
                      United States District Judge